IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| NEIL SCHATTIN, | § | |
| | § | |
| Plaintiff, | § | |
| | § | CIVIL ACTION NO.: 13-CV-220-RAW |
| v. | § | |
| | § | JURY TRIAL DEMANDED |
| DAL-ITALIA LLC, wholly owned | § | |
| subsidiary of, MOHAWK INDUSTRIES, | § | |
| INC., | § | |
| | § | |
| Defendant. | § | |

**DEFENDANT DAL-ITALIA'S MOTION FOR**
**SUMMARY JUDGMENT ON ALL CLAIMS AND BRIEF IN SUPPORT**

Paul E. Hash (admitted *pro hac vice*)
State Bar No. 09198020
*hashp@jacksonlewis.com*
Julie A. Farmer (admitted *pro hac vice*)
Texas Bar No. 24059734
*farmerj@jacksonlewis.com*

JACKSON LEWIS P.C.
500 North Akard, Suite 2500
Dallas, TX  75201
Telephone:     (214) 520-2400
Fax:               (214) 520-2008

*-and-*

Jo Anne Deaton
OBA No. 5938
jdeaton@rhodesokla.com
RHODES HIERONYMUS OKLAHOMA
ONEOK Plaza
100 W. 5th Street, Suite 400
Tulsa, OK  74103-4287
Telephone:     (918) 582-1173
Fax:               (918) 592-3390

**ATTORNEYS FOR DEFENDANTS**

## TABLE OF CONTENTS

**Contents**

TABLE OF AUTHORITIES ...................................................................................................ii

I.      INTRODUCTION ........................................................................................... 1

II.     STATEMENT OF UNDISPUTED, MATERIAL FACTS ............................... 2

        A.      Neil Schattin's Employment with Dal-Italia........................................... 2

        B.      Dal-Italia Appoints Industry Experts to Investigate Major Quality Issues
                in the Plant and Numerous Issues are Attributed to Schattin.................. 2

        C.      The Muskogee Plant Manager is Terminated, and Kelly Owen becomes
                Interim Plant Manager. ......................................................................... 4

                1.      Owen Meets with Schattin Regarding His Observations and Expectations. ....... 4

                2.      Owen Conducts Schattin's Performance Evaluation and Schattin is
                        Rated  2 overall out of a possible 5................................................... 5

        D.      The Company CEO Visits the Muskogee Plant....................................... 5

        E.      Dal-Italia Searches for and Selects a Permanent Plant Manager. ........... 6

        F.      Schattin's Job Performance Fails to Improve and he is Discharged........ 8

III.    ARGUMENT AND AUTHORITIES................................................................ 9

        A.      Schattin Cannot Establish that Dal-Italia Discriminated Against him
                due to his Age. ...................................................................................... 9

                1.      Lorberbaum's Inquiry Regarding Schattin's Age is not Probative of
                        Age Discrimination............................................................................ 9

                2.      Schattin Cannot Establish that he Would have Been Selected for the
                        Plant Manager Position "but for" his age. ......................................... 12

                3.      Schattin Cannot Establish that he Would not have been Discharged
                        "but for" his age............................................................................... 15

        B.      Schattin Cannot Establish Facts for His Claim of Intentional Infliction of
                Emotional Distress................................................................................. 17

                1.      Schattin has no Evidence of "Extreme and Outrageous" Conduct.................. 18

IV.     CONCLUSION............................................................................................ 19

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

CASES

*Antonio v. Sygma Network, Inc.*,
458 F.3d 1177 (10th Cir. 2006) ...........................................................................11

*Aramburu v. The Boeing Co.*,
112 F.3d 1398 (10th Cir. 1997) .....................................................................12, 19

*Baucom v. Amtech Sys. Corp.*,
No. 96-2130, 1997 U.S. App. LEXIS 33992 (10th Cir 1997) ...........................10, 11

*Bolin v. Okla. Conf. of the United Methodist Church*,
397 F. Supp. 2d 1293 (N.D. Okla. 2005) .................................................17, 18, 19

*Computer Publications, Inc. v. Welton*,
49 P.3d 732 (Okla. 2002) ..................................................................................17

*Cone v. Longmont United Hosp. Ass'n*,
14 F.3d 526 (10th Cir. 1994) ...............................................................................9

*Daemi v. Church's Fried Chicken, Inc.*,
931 F.2d 1379 (10th Cir.1991) ...........................................................................18

*Doyle v. Nordam Group, Inc.*,
No. 11-5004, 492 Fed. App'x 846 (10th Cir. 2012) ...................................9, 12, 13

*Exum v. United States Olympic Comm.*,
389 F.3d 1130 (10th Cir. 2004) .....................................................................14, 17

*Gaylord Entertainment v. Thompson*,
958 P.2d 128 (Okla. 1998) ............................................................................17, 19

*Gross v. FBL Fin. Servs., Inc.*,
557 U.S. 167 (2009) ......................................................................................9, 12

*Houston v. Ind. Sch. Dist. No. 89 of Okla. Cty.*,
No. civ-08-374-d, 2010 U.S. Dist. LEXIS 23911 (W.D. Okla. Mar. 12, 2010) .....................18

*Jones v. Okla. City Pub. Sch.*,
617 F.3d 1273 (10th Cir. 2010) ..........................................................................16

*Luster v. Vilsack*,
667 F.3d 1089 (10th Cir. 2011) ..........................................................................16

*MacKenzie v. Denver*,
   414 F.3d 1266 (10th Cir. 2005) ...............................................................................12, 15, 16

*McClain v. Southwest Steel Co.*,
   940 F. Supp. 295 (N.D. Okla. 1996) ...................................................................................18

*McKnight v. Kimberly Clark Corp.*,
   149 F.3d 1125 (10th Cir. 1998) ...........................................................................................10

*Moody v. Okla. Dept. of Corrections*,
   No. 11-cv-098, 2012 U.S. Dist. LEXIS 98594 (N.D. Okla. July 17, 2012) (Payne, J.) ..........18

*Nat'l R.R. Passenger Corp. v. Morgan*,
   536 U.S. 101 (2002) ...........................................................................................................15

*Odom v. Frank*,
   3 F.3d 839 (5th Cir. 1993) ..................................................................................................15

*Perkins v. Wynne*,
   No. 06-6321, 245 Fed. App'x 771 (10th Cir. 2007) .............................................................17

*Stone v. Autoliv ASP, Inc.*,
   210 F.3d 1132 (10th Cir. 2000) ........................................................................................9, 10

*Tabor v. Hilti, Inc.*,
   703 F.3d 1216 (10th Cir. 2013) ........................................................................................9, 12

*Tex. Dep't of Cmty. Affairs v. Burdine*,
   450 U.S. 248 (1981) ...........................................................................................................12

*Wagoner v. Pfizer, Inc.*,
   No. 09-3066, 391 Fed. App'x 701 (10th Cir 2010) ...........................................................9, 10

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| NEIL SCHATTIN, | § | |
| | § | |
| Plaintiff, | § | |
| | § | CIVIL ACTION NO.: 13-CV-220-RAW |
| v. | § | |
| | § | JURY TRIAL DEMANDED |
| DAL-ITALIA LLC, wholly owned | § | |
| subsidiary of, MOHAWK INDUSTRIES, | § | |
| INC., | § | |
| | § | |
| Defendant. | § | |

## DEFENDANT DAL-ITALIA'S MOTION FOR
## SUMMARY JUDGMENT ON ALL CLAIMS AND BRIEF IN SUPPORT

Defendant Dal-Italia, wholly owned subsidiary of Mohawk Industries, Inc., ("Dal-Italia") moves for summary judgment on Plaintiff Neil Schattin's ("Schattin") claims for age discrimination in violation of the Age Discrimination in Employment Act ("ADEA") and for intentional infliction of emotional distress ("IIED") under Oklahoma state law.  In support, Dal-Italia shows the Court as follows:

## I.    INTRODUCTION

In this employment case, Plaintiff Neil Schattin claims that he was discriminated against due to his age because he was not selected for a promotion and because he was discharged from his employment from Defendant Dal-Italia.  His claims rely heavily on an allegation that an individual not involved in any of the decisions affecting his employment asked him how old he was on one occasion.  Schattin also asserts a claim for intentional infliction of emotional distress.  As set forth in more detail below, summary judgment is proper because Schattin was not selected for the promotion and ultimately discharged for legitimate, non-discriminatory reasons unrelated to his age.  Summary judgment is also proper on Schattin's

IIED claim because he has no evidence of extreme and outrageous conduct to support such a claim.

## II.   STATEMENT OF UNDISPUTED, MATERIAL FACTS

### A.   Neil Schattin's Employment with Dal-Italia.

Dal-Tile has a plant in Muskogee, Oklahoma, where raw materials are manufactured into ceramic tile products.  (Owen dec. ¶ 2).  Neil Schattin was hired by Dal-Italia on March 17, 2008, as the Director of Technical Services for Dal-Tile's Muskogee plant.[1] (Owen dec. ¶ 3).  Schattin reported to the Plant Manager, Ed Smart.  (Owen dec. ¶ 3).  The Plant Manager is the highest level manager at the Muskogee plant.  (Owen dec. ¶ 3).   Smart reported to Kelly Owen, the Senior Director of Floor Tile Operations.  (Owen dec. ¶ 3).  As the Director of Technical Services, Schattin led the Technical Department of the Muskogee plant.  (Schattin depo. 87).  The technical department is responsible for management of raw materials, process flow through the plant, the formulations and preparation of glazes, preparation of the body powder that is pressed into tiles, and firing processes in the kilns.  (Schattin depo 85-86).  The technical department is also charged with the quality of the finished tile products and testing to determine whether specifications are met.   (Schattin depo 86).   Additionally, the technical department interfaced with the company's research and development department based in Dallas. (Schattin depo 86).  The processes Schattin was responsible for in the technical department affect the manufacturing process down the entire production line at the plant as well as the finished products coming off of the line.  (Schattin depo 99-100).  Schattin considered himself the second or third highest level person at the Muskogee plant.  (Schattin depo 128-129).

### B.   Dal-Italia Appoints Industry Experts to Investigate Major Quality Issues in the Plant and Numerous Issues are Attributed to Schattin.

---

[1] Schattin's employer was Defendant Dal-Italia. (Schattin depo 77).  The names "Dal-Italia" and "Dal-Tile" are used synonymously throughout this brief.

**DEFENDANT DAL-ITALIA'S MOTION FOR SUMMARY**
**JUDGMENT ON ALL CLAIMS AND BRIEF IN SUPPORT**                                    **Page 2**

Under Smart's and Schattin's leadership, the plant experienced major problems with quality control.  (Owen dec. ¶ 3).  The technical department, led at the time by Schattin, sets the specifications for tile products and is responsible for following the specifications to ensure consistency in the quality of the finished tile products.  (Schattin depo 91-92).  In 2011 and early 2012, the company and the plant invested significant time and resources with its Research and Development department, Manufacturing department, Engineering department, and external resources to correct process controls that were causing tile products to not be manufactured to correct specifications.  (Owen dec. ¶ 3).  The company observed a notable increase in customer complaints and other quality-related issues with the production of tile products produced by the Muskogee location.  (Owen dec. ¶ 3).  The quality problems were issues with standard recovery, conformance to product specifications, material and process instability, and lack of adherence to standard operation procedures.  (Owen dec. ¶ 3).  In August 2011, the company engaged industry experts from locations outside of the Muskogee plant to assist plant leadership in identifying solutions to fix the performance issues in the plant.  (Owen dec. ¶ 3).  The expert team performed an audit and developed a Kaizen report which outlined performance issues in the plant, the departments the issues were traced to, and action items for each department to follow up on. (Owen dec. ¶ 3).  A significant number of action items listed in the report were attributed to departments under Schattin's control.  (Owen dec. ¶ 3).   In fact, Schattin does not dispute that 87 of the 140 action items fell under departments over which he was directly responsible.  (Schattin depo 149).  The results of the Kaizen report also highlighted Smart's failure to hold Schattin accountable for his areas of responsibility.  (Owen dec. ¶ 3).

**C.      The Muskogee Plant Manager is Terminated, and Kelly Owen becomes Interim Plant Manager.**

Due to the notable performance issues in the plant, as well as the results of the report from the expert team, Kelly Owen made the decision to discharge Plant Manager Ed Smart in December of 2011.  (Owen dec. ¶ 4).  Through discussions with David Baran, currently the Senior Vice President Director of Operations, Owen became the interim plant manager for the Muskogee Plant after Smart's departure.  (Owen dec. ¶ 4).

**1.      <u>Owen Meets with Schattin Regarding His Observations and Expectations.</u>**

In his observations of Schattin's job performance and management style, Owen noted a lack of engagement in the day-to-day activities of the plant and in communicating and working as a team with other members of management.  (Owen dec. ¶ 5).  In January of 2012, Owen met with Schattin one on one to discuss his expectations regarding critical issues in the plant such as quality performance, improvement of communications across all aspects of the plant, improvement of Schattin's relationships with other managers, and improvement as far as engagement in the daily activities in the plant to promptly identify and correct issues that were affecting the plant and product quality.  (Owen dec. ¶ 5).  Owen told Schattin that he expected him to participate in daily walks of the plant so that he could have a better awareness of the activities and issues on the production floor and which would, in turn, allow him to more effectively manage his department.  (Owen dec. ¶ 5).   Schattin acknowledges that Owen expected plant performance to improve from 2011 levels and that Owen expected Schattin's technical group to provide full support to other departments on a daily basis, including the production area.  (Schattin depo. 163).  Schattin, however, did not feel like the daily walks were productive use of his time.  (Schattin depo 170).

2.      **Owen Conducts Schattin's Performance Evaluation and Schattin is Rated 2 overall out of a possible 5**

On or around April 2011, Owen prepared Schattin's performance evaluation for 2011.  (Owen dec. ¶ 6, Exhibit 2-A).   Schattin's overall score on his 2011 evaluation was a 2 out of a possible 5.  (Owen dec. ¶ 6, Exhibit 2-A).  Consistent with the expectations Owen outlined in their January 2012 one-on-one meeting, Owen specifically noted in the evaluation that Schattin needed to "step up, work closely with others in the plant, and provide his insight to all areas of the plant, not just his department."  (Owen dec. ¶ 6, Exhibit A).  Owen also noted that Schattin needed to focus on building relationships with other functions in the plant.  (Owen dec. ¶ 6, Exhibit A).  The emphasis on collaboration with other areas of the plant was especially important during this time period so that the plant as a whole could promptly resolve the quality issues.  (Owen dec. ¶ 6).   Schattin disagrees with Owen's assessment of his performance, but admits that he did have problems working with other areas of the plant, as stated in the evaluation.  (Schattin depo 190, 191-92).

D.      **The Company CEO Visits the Muskogee Plant.**

On April 3 or 4 of 2012, the company CEO, Jeff Lorberbaum, visited and toured the Muskogee plant. (Schattin depo 218).  During a meeting in which Schattin was present along with other members of plant management, Schattin claims that Lorberbaum asked Schattin his age.  Schattin's recollection of the context of the meeting is as follows:

```
86772 SCHATTIN NEIL 091013, (Pages 218:20 to 219:16)
                 218
20  Mr. Lorberbaum was
21  discussing the adjustment and approval of glazes.
22  He brought up -- first of all, he brought up the
23  concept of trying to adjust the glazes to a specific
24  color, and he said has anybody here ever been in the
25  military?  I raised my hand.  As previously
                 219
 1  testified, I had been in the United States Army.
```

2   And he said, okay, when we adjust the glazes,
3   correct me if I'm wrong, words to this effect, we
4   target long and we target short; in other words, we
5   overshoot the color, we under shoot the color, and
6   through a series of successive iterations we in
7   effect bracket the target, which is -- I believe his
8   point is it's fairly common practice in the
9   military, you know, for firing munitions, be they
10  artillery or tanks or whatever they may be.  You
11  shoot long, you shoot short, and then for the series
12  of iterations you effectively are able to hit the
13  target.
14          And then he looked at me, 10 feet away
15  from me, and he said to me and only me, how old are
16  you?

(Schattin depo at 218-219).

Schattin claims that he stated his age in response to Lorberbaum's question, and no further comments related to his age were made.  (Schattin Depo 219, 248).  Schattin was the only one who raised his hand when Lorberbaum asked who was in the military, and Lorberbaum was looking at the entire group when he was relating the story about bracketing targets. (Schattin Depo 219-220).  Other than this single inquiry from Lorberbaum, Schattin does not claim anyone else at the company made comments that he believed were discriminatory. (Schattin depo 235-236). Furthermore, Lorberbaum does not make any personnel decisions at the plant level.  (Owen dec. ¶ 9).

**E.      Dal-Italia Searches for and Selects a Permanent Plant Manager.**

Beginning in February of 2012, the company began looking for a replacement for Ed Smart in the Plant Manager position.  (Owen dec. ¶ 7).  The company had a panel that considered both external and internal candidates for the Plant Manager position. (Owen dec. ¶ 7). The panel consisted of Owen, David Baran, Director of Human Resources Robin Krueger, Vice President of Product Development David Earl, Vice President of Human Resources Troy Closson, Talent Acquisition Manager Donnie Wynn, and Vice President of Engineering

Wolfgang Zimmerman.  (Owen dec. ¶ 7).  Schattin was one of three internal candidates that were considered, along with Angel Martin, who was the Technical Director at the company's facility in Monterrey, Mexico, and the then current Operations Manager for the Muskogee plant, Brent Shoemaker.  (Owen dec. ¶ 7).  After the first round of interviews, Martin and Shoemaker were selected to move on to the next round.  (Owen dec. ¶ 7).

The panel ultimately selected Brent Shoemaker for the Plant Manager position after a final round of interviews.  (Owen dec. ¶ 7).  In making the decision to select Shoemaker for the Plant Manager position, the panel focused on the leadership skills that the new Plant Manager needed to possess in order to improve plant performance, and specifically, skills that would foster and promote employee engagement on the production floor and facilitate the prompt recognition and remediation of problems on the line that were ultimately causing quality issues.  (Owen dec. ¶ 8).  Simply put, the Muskogee plant needed an individual who demonstrated willingness to take "hands on" and proactive approach to management of all departments in the plant. (Owen dec. ¶ 8).

In the interviews with Shoemaker, and from observations of his work at the Muskogee plant, the panel felt that Shoemaker was the best candidate as far as connecting with employees and taking a more "hands on" management approach.  (Owen dec. ¶ 9).  Shoemaker also had relevant experience at Dal-Tile's Lincoln Way East manufacturing facility as its Operations Manager.  (Owen dec. ¶ 9).  The committee emphasized the factors it considered key leadership qualities, not just the "on paper" qualifications outlined in the position description, in the decision to ultimately select Shoemaker for the Plant Manager position.  (Owen dec. ¶ 9). Additionally, the criteria listed in the position description on the job posting were geared more towards screening external candidates where the company was not familiar with their

background and experience.  (Owen dec. ¶ 9).  Schattin's age was not considered in the selection decision.  (Owen dec. ¶ 9).  Company CEO Jeff Lorberbaum was not consulted in the Plant Manager selection process and was not involved in the decision-making process in any way.  (Owen dec. ¶ 9, Baran dec. ¶ 2, Closson dec. ¶ 2).  Notably, in 2009, Schattin recommended that the company hire Brent Shoemaker from the Lincoln Way East facility to fill the operations manager position at the Muskogee plant.  (Schattin depo 193-194).

Schattin's management approach, on the other hand, was not a good fit as far as the needs of the Muskogee plant.  Schattin's level of engagement in the plant's operations consisted of "specifically respond[ing] to questions asked" and giving his technical opinion based on the level of his experience.  (Schattin depo. 166).  Although Schattin agrees that a plant manager must be proactive, he admits that his approach of only answering questions that are directly asked of him is not a proactive approach to management.  (Schattin depo 166-168).  Schattin also admits that he had issues working with other departments in the plant.  (Schattin depo 192).  Schattin believes that a plant manager can come in at 8:00 and leave at 5:00 and never leave the office and does not necessarily need to do daily walks in the plant.  (Schattin depo 132-133).

**F.      Schattin's Job Performance Fails to Improve and he is Discharged.**

In the months that followed, despite further coaching, Schattin failed to improve on the items Owen addressed with him in their one-on-one meeting and in his performance evaluation, and Owen made the decision to discharge him effective July 31, 2012.  (Owen dec. ¶ 10).  Schattin's age was not a consideration in the decision to discharge him.  (Owen dec. ¶ 10).  Company CEO Jeff Lorberbaum was not consulted regarding the decision to discharge Schattin, and he was not involved in the decision-making process in any way.  (Owen dec. ¶ 10, Baran dec. ¶ 3, Closson dec. ¶ 3).

### III.   ARGUMENT AND AUTHORITIES

**A.     Schattin Cannot Establish that Dal-Italia Discriminated Against him due to his Age.**

Schattin claims that he was discriminated against due to his age in two respects: 1) He claims that he was not promoted to the plant manager position because of his age, and 2) He claims that he was discharged because of his age.[2]  In support of his claims, he asserts that the alleged question by Lorberbaum, the company's CEO, raises an inference of age discrimination.  To advance his claims, Schattin must establish by a preponderance of evidence that Dal-Italia would not have taken the challenged employment actions "but for" his age.  *Doyle v. Nordam Group, Inc.,* No. 11-5004, 492 Fed. App'x 846, 849 (10th Cir. 2012) (citing *Gross v. FBL Fin. Servs., Inc.,* 557 U.S. 167, 177-78 (2009)). As set forth below, his claims of age discrimination fail as a matter of law.

#### 1.     Lorberbaum's Inquiry Regarding Schattin's Age is not Probative of Age Discrimination.

Alleged discriminatory statements do not qualify as direct evidence "if the context or timing of the statements is not closely linked to the adverse decision."  *Tabor v. Hilti, Inc.,* 703 F.3d 1216 (10th Cir. 2013).  It is well settled in the Tenth Circuit that "isolated [or] ambiguous comments" are "too abstract" to support an inference of discrimination. *Cone v. Longmont United Hosp. Ass'n,* 14 F.3d 526, 531 (10th Cir. 1994); *see also Wagoner v. Pfizer, Inc.,* No. 09-3066, 391 Fed. App'x 701, 708 (10th Cir 2010); *Stone v. Autoliv ASP, Inc.,* 210 F.3d 1132, 1140 (10th Cir. 2000).  Furthermore, "age-related comments by non-decision makers are not material in showing the [employer's] action was based on age discrimination." *Cone,* 14 F.3d at 31.  In order to rely on an age-related statement to support his claims, Schattin must show 1)

---

[2] Schattin stated in his deposition that the alleged Lorberbaum comment and the failure to promote him to the plant manager position are the only incidents of age discrimination he is pursuing in this case. (Schattin depo 234-235). However, he alleges in his petition that his discharge was due to his age.

that the comment was made by a decision maker, and 2) that there was a nexus between the alleged discriminatory statement and the employment decision at issue.  *See McKnight v. Kimberly Clark Corp.,* 149 F.3d 1125, 1129 (10th Cir. 1998) (citing *Cone,* 14 F.3d at 31).

Indeed, a single age-related comment, *even if made by a decision maker,* and directly related to the plaintiff's employment, may not be sufficient to infer discriminatory intent. *See, e.g., McKnight,* 149 F.3d at 1129 (holding that the plaintiff failed to show pretext based solely on the comment of a supervisor at the time of the termination stating that the supervisor "was not as old" as the plaintiff); *Stone,* 210 F.3d at 1135, 1141 (holding that a comment made by the plaintiff's supervisor that "at [plaintiff's age] it would be difficult to train for another position" was insufficient to raise inference of age discrimination); *Baucom v. Amtech Sys. Corp.,* No. 96-2130, 1997 U.S. App. LEXIS 33992, *9 (10th Cir 1997) (holding that supervisor's alleged comments that the plaintiff was "too old and set in his ways" and "would not be around much longer" did not raise inference of age discrimination).  Additionally, the passage of time can render an alleged age-related comment too remote to support an inference of age discrimination. *Wagoner,* 391 Fed. App'x at 708 (citing *Antonio v. Sygma Network, Inc.,* 458 F.3d 1177, 1184 (10th Cir. 2006)).

Taking Schattin's testimony regarding the context of the meeting with Lorberbaum and plant management as true, under Tenth Circuit precedent, Lorberbaum's inquiry as to Schattin's age is an isolated comment that does not raise an inference of discrimination. However, even assuming that Lorberbaum's inquiry of Schattin's age could be construed as more than simply an innocuous question, Lorberbaum was not involved in the decision to select Shoemaker over Schattin for the plant manager position or the ultimate termination decision. (Owen dec. ¶ 9, 10, Baran dec. ¶ 2-3, Closson dec. ¶ 2-3).  Finally, Schattin cannot establish a

nexus between Lorberbaum's inquiry of his age and his non-selection for the plant manager position or his discharge.   Unlike other cases in this circuit involving alleged age-related remarks, Lorberbaum's inquiry had no connection to Schattin's employment or his ability to perform his job.   Further, the Tenth Circuit has held that alleged age-related remarks that <u>did</u> have a connection to the plaintiff's employment or job performance were no more than stray remarks.   *See* cases cited *supra*.   The question at issue was posed in the context of Lorberbaum's discussion of military targeting strategies after Schattin raised his hand to acknowledge that he had served in the military.   (Schattin depo 219-220).   Moreover, the alleged comment occurred several months before Schattin's discharge, which further weakens any purported "nexus" between the alleged comment and that employment decision.   *See Baucom v. Amtech Sys. Corp.*, No. 96-2130, 1997 U.S. App. LEXIS 33992, *9 (10th Cir 1997) (holding that an age-related comment made by the plaintiff's supervisor directly referring to the plaintiff and made three months prior to the plaintiff's discharge was a stray remark and not evidence of discriminatory animus).   Schattin's allegations relating to the alleged comment made by Lorberbaum amount to no more than a stray remark, which is insufficient to raise an inference of discrimination.

Schattin maintains that Lorberbaum and Owen were the only individuals responsible for age discrimination related to his employment with Dal-Italia.   (Schattin depo 235).   Schattin does not allege that Owen made any age-related remarks directed at him. (Schattin depo 235-236). Without the stray remarks of Lorberbaum, Schattin's circumstantial claims relating to Owen's involvement in his non-selection for the plant manager position and his discharge are all that remain, and for the reasons set forth below, summary judgment is proper on both claims.

**2.**    **Schattin Cannot Establish that he Would have Been Selected for the Plant Manager Position "but for" his age.**

To state a prima facie case of age discrimination regarding Schattin's failure to promote claim, he must demonstrate by a preponderance of evidence that (1) he belongs to a protected class; (2) he applied for an available position for which he was qualified; and (3) he "was rejected under circumstances which give rise to an inference of unlawful discrimination." *Tabor,* 1703 F.3d at 1216 (citing *Tex. Dep't of Cmty. Affairs v. Burdine,* 450 U.S. 248, 253 (1981)).   If Schattin establishes a prima facie case, then the burden shifts to Dal-Italia to articulate a legitimate, nondiscriminatory reason for not selecting Schattin for the plant manager position.   *MacKenzie v. Denver,* 414 F.3d 1266, 1278 (10th Cir. 2005).   Once Dal-Italia articulates its legitimate-nondiscriminatory reason, Schattin retains the ultimate burden to establish that Dal-Italia's explanation is pretext for discrimination. *Id.*

Schattin cannot show that he would have been selected for the plant manager position "but for" his age. *See Doyle v. Nordam Group, Inc.,* No. 11-5004, 492 Fed. App'x 846, 849 (10th Cir. 2012) (citing *Gross v. FBL Fin. Servs., Inc.,* 557 U.S. 167, 177-78 (2009)).   He cannot point to the alleged age-related comment by Lorberbaum because, as set forth above, the inquiry does not raise an inference of age discrimination, and Lorberbaum was not involved in the selection process in any way. *See supra* Part III.A.1.   Schattin believes that he was "far more experienced" than Shoemaker, who was selected and who is younger.   (Schattin depo 208).   But Schattin's subjective beliefs alone are insufficient evidence to survive summary judgment. *Aramburu v. The Boeing Co.*, 112 F.3d 1398, 1408 n.7 (10th Cir. 1997) (noting that a subjective belief of discrimination is not sufficient to preclude summary judgment).

Schattin testified that the "main" reason he believes he was denied the plant manager position because of his age was that he has a technical degree as noted in the position

description, and Shoemaker does not. (Schattin depo 207-208).   But the criteria listed in the position description on the Plant Manager job posting were geared more towards screening external candidates where the company was not familiar with their background and experience. (Owen dec. ¶ 9). Moreover, the Tenth Circuit has explained that there is a distinction between the "minimum" requirements to be eligible for a position an "other positive attributes that set competing candidates apart." *Doyle v. Nordam Group, Inc.,* No. 11-5004, 492 Fed. App'x 846, 851-852 (10th Cir. 2012).  Indeed, "a candidate may be minimally qualified, yet lack the skill set and experience other candidates offer. *Id.* Even if Schattin met the minimum qualifications for the position, such as having a technical degree, the undisputed quality control issues that came to light as a result of the expert study that were attributed to Schattin did not warrant elevating him to the plant manager position.  Schattin does not dispute that 87 out of the 140 action items identified in the Kaizen study fell within areas for which he was directly responsible.  (Schattin depo 149).  Additionally, Shoemaker possessed objective qualifications for the job, such as his prior experience managing the Lincoln Way East plant. (Owen dec. ¶ 9).

        In addition to objective criteria, the panel considered other leadership qualities it considered to be important for a candidate that would be charged with managing an entire plant with multiple departments, such as willingness to engage with all departments in the plant and to communicate with all levels of employees on a daily basis to identify issues on the line before they become major problems.  (Owen dec. ¶ 8).  These issues in leadership were evident under the management of Ed Smart, and Schattin as the "number 2" person in the plant. (Schattin depo 128-129, Owen dec. ¶ 3-6).   Simply put, the Muskogee plant needed an individual who demonstrated willingness to take "hands on" and proactive approach to management.  (Owen dec. ¶ 8).  The panel, in their observations of Shoemaker's work managing Lincoln Way East

plant and as the operations manager of the Muskogee plant, believed that Shoemaker was the best candidate as far as these attributes.  (Owen dec. ¶ 9).

Although Owen emphasized the importance of daily walks of the entire plant during his meeting with Schattin in January 2012, Schattin admits that he felt that those walks were not a productive use of his time.  (Schattin depo 170).  Schattin also admits that Shoemaker was out on the floor on daily walks and outside of daily walks. (Schattin depo 197).  Schattin's management approach, on the other hand, was not a good fit as far as the needs of the Muskogee plant.   Schattin's level of engagement in the plant's operations consisted of "specifically respond[ing] to questions asked" and giving his technical opinion based on the level of his experience.  (Schattin depo 166).  Although Schattin agrees that a plant manager must be proactive, he admits that his approach of only answering questions that are directly asked of him is not a proactive approach to management.  (Schattin depo 166-168).  Schattin also admits that he had issues working with other departments in the plant.  (Schattin depo 192).  Schattin believes that a plant manager can come in at 8:00 and leave at 5:00 and never leave the office and does not necessarily need to do daily walks in the plant.  (Schattin depo 132-133).

Schattin's management style was not an option for the company given the major quality issues affecting all areas of the plant that needed addressing and corrected.  Moreover, the undisputed fact that 87 Kaizen action items were attributed to Schattin's department is evidence that his "style" was not working.  The fact that Schattin's approach to management differs with the company's assessment of how the plant manager job should be done is not evidence that he was denied the promotion because of his age. *See Exum v. United States Olympic Comm.*, 389 F.3d 1130, 1138 (10th Cir. 2004) ("The relevant inquiry is not whether [the defendant's] proffered reasons were wise, fair or correct, but whether [it] honestly believed those

reasons and acted in good faith upon those beliefs.") (citing *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002)).

It is also important to note that Owen, who Schattin accuses of age discrimination, was not the sole decision maker in the selection process. (Owen dec. ¶ 7, Schattin depo 202). Owen is also over 40 and was over 40 during the relevant time period in this case.  (Owen dec. ¶ 2).  And, as set forth above, Lorberbaum, the only other person Schattin accuses of age discrimination, was not involved in the decision in any way.  (Owen dec. ¶ 9, Baran dec. ¶ 2, Closson dec. ¶ 2).

Dal-Italia selected Shoemaker over Schattin for the plant manager position for legitimate, non-discriminatory reasons related to the business needs of the Muskogee plant.  As the Tenth Circuit has noted, "unless the disparity in employees' qualifications are obvious, we judges should be reluctant to substitute our view for those of the individuals charged with the evaluation duty by virtue of their own years of experience and expertise in the field in question." *MacKenzie v. Denver*, 414 F.3d 1266, 1278 (10th Cir. 2005) (citing *Odom v. Frank*, 3 F.3d 839, 847 (5th Cir. 1993)).  Schattin cannot show that he would have been selected for the plant manager position "but for" his age, therefore, his discrimination claim should be dismissed.

Schattin admitted in his deposition that only incidents of age discrimination he alleges in this case are the failure to promote him to the plant manager position and his claim related to the alleged remark by Lorberbaum.  (Schattin depo 234-235).  However, Dal-Italia will still address Schattin's discharge, which was for legitimate, non-discriminatory reasons.

**3.**     **<u>Schattin Cannot Establish that he Would not have been Discharged "but for" his age.</u>**

To survive summary judgment on a discriminatory discharge claim, Schattin must show (1) he belonged to a protected class, (2) he suffered an adverse employment action, (3) he

was qualified for his position, (3) he was discharged, and (4) he was treated less favorably than others not in the protected class. *Jones v. Okla. City Pub. Sch.*, 617 F.3d 1273, 1279 (10th Cir. 2010).

If Schattin establishes a prima facie case, then the burden shifts to Dal-Italia to articulate a legitimate, nondiscriminatory reason for Schattin's discharge. *MacKenzie v. Denver,* 414 F.3d 1266, 1278 (10th Cir. 2005).   Once Dal-Italia articulates its legitimate, non-discriminatory reason, Schattin retains the ultimate burden to establish that Dal-Italia's explanation is pretext for discrimination. *Id.*

Schattin cannot establish a prima facie case of age discrimination related to his discharge because he has no evidence that he was treated less favorably than others who are not in his protected class.  Stated differently, Schattin has no competent summary judgment evidence that Dal-Italia "treated similarly situated individuals more favorably."  *Luster v. Vilsack,* 667 F.3d 1089, 1095 (10th Cir. 2011).

As the Director of Technical Services at the Muskogee plant, Schattin was the highest level employee in his department.  (Schattin depo 87).  He admits that the 87 out of the 140 action items on the Kaizen report were attributed to areas for which he was directly responsible.  (Schattin depo 149).  Schattin cannot point to any comparators who were in the same position as him, who had the same or more number of action items attributed to him, and who were not discharged.  Moreover, he has no evidence of other managers who were counseled regarding lack of engagement in daily plant operations and issues with relationships with other managers.  (Owen dec. ¶ 5-6).  Notably, Schattin's boss, the plant manager during the time period when the issues in the report were occurring, was also discharged due to the identified problems at the plant.  (Owen dec. ¶ 4).  Schattin cannot rely on the alleged Lorberbaum

comment to support a discriminatory discharge claim because it was no more than a stray remark made months before his discharge. *See supra* Part III.A.1.  Furthermore, Schattin does not allege that Owen made any comments related to his age.  (Schattin depo 235-236).  Owen met with Schattin about his expectations in January 2012, and Schattin's performance did not improve, as evidenced in his performance evaluation.  (Owen dec. ¶ 5-6, 10).  Schattin's mere disagreement with Owen's assessment of his job performance is insufficient to survive summary judgment on his claim that he would not have been discharged "but for" his age.  *Exum v. United States Olympic Comm.*, 389 F.3d 1130, 1138 (10th Cir. 2004); *see also Perkins v. Wynne,* No. 06-6321, 245 Fed. App'x 771, 774 (10th Cir. 2007) (affirming district court ruling that that the plaintiff's disagreement as to the employer's assessment of his job performance was insufficient evidence to survive summary judgment).   Schattin's age discrimination related to his discharge, to the extent that he still asserts it, should be dismissed.

**B.     Schattin Cannot Establish Facts for His Claim of Intentional Infliction of Emotional Distress.**

To establish his claim for intentional infliction of emotional distress (IIED), Schattin must show that (1) Dal-Italia acted intentionally or recklessly; (2) Dal-Italia's conduct was extreme and outrageous; (3) Dal-Italia's conduct caused Schattin' emotional distress; and that (4) the resulting emotional distress was severe.  *Bolin v. Okla. Conf. of the United Methodist Church*, 397 F. Supp. 2d 1293, 1298-99 (N.D. Okla. 2005) (citing *Computer Publications, Inc. v. Welton*, 49 P.3d 732, 735 (Okla. 2002)).  Courts consider IIED claims under "very narrow standards," so Schattin must show Dal-Italia "engaged in conduct that was not only unreasonable but also was 'beyond all possible bounds of decency in the setting in which it occurred' and was such that it can be "regarded as utterly intolerable in a civilized community.'"  *Id.* (citing *Gaylord Entertainment v. Thompson*, 958 P.2d 128, 149 n.92 (Okla. 1998)).

1.     **Schattin has no Evidence of "Extreme and Outrageous" Conduct.**

"Mere insults, indignities, or petty oppressions" are not extreme and outrageous. *See Daemi v. Church's Fried Chicken, Inc.*, 931 F.2d 1379, 1388 (10th Cir.1991). The high bar on the "extreme and outrageous" factor is especially pronounced in the employment context because, as the Tenth Circuit has recognized, "an employer must be given a certain amount of latitude in dealing with [its] employees." *Daemi*, 931 F.2d at 1388 n.8. *See also Moody v. Okla. Dept. of Corrections*, No. 11-cv-098, 2012 U.S. Dist. LEXIS 98594, at *30 (N.D. Okla. July 17, 2012) (Payne, J.) (granting summary judgment to employer on employee's IIED claim and stating "[a]lthough the allegations against [employer], if true, are certainly deplorable, this Court cannot find they rise to the level of outrageousness required to support a claim of IIED"); *Houston v. Ind. Sch. Dist. No. 89 of Okla. Cty.*, No. civ-08-374-d, 2010 U.S. Dist. LEXIS 23911, at *61-62 (W.D. Okla. Mar. 12, 2010) (granting summary judgment to employer on employee's IIED claim where employee alleged that her supervisor "humiliated her in front of her peers by criticizing her work performance and that she was so upset by his criticism of her work that she sought medical treatment"); *Bolin* 397 F. Supp. 2d at 1298-99 (collecting cases, stating "Oklahoma courts have examined a variety of conduct claimed to be outrageous in the employment context, setting a very high standard for actionable conduct")); *McClain v. Southwest Steel Co.*, 940 F. Supp. 295, 300 (N.D. Okla. 1996) (granting summary judgment on IIED claim where plaintiff only alleged coworkers made various "hateful "comments about his mental state because "[l]iability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community").

Schattin does not allege the type of conduct that rises to the level of "extreme and outrageous." His only evidence to support his IIED claim is his subjective belief that Owen, and

only Owen, "intended to inflict emotional distress." (Schattin depo 240-41). But as previously stated, conclusory, subjective beliefs are not competent summary judgment evidence. *Aramburu v. The Boeing Co.*, 112 F.3d 1398, 1408 n.7 (10th Cir. 1997). Moreover, there is no evidence in the record to suggest that Owen made any ageist or "hateful" comments or otherwise "engaged in conduct that was not only unreasonable but also was 'beyond all possible bounds of decency in the setting in which it occurred' and was such that it can be "regarded as utterly intolerable in a civilized community."" *Bolin v. Okla. Conf. of the United Methodist Church*, 397 F. Supp. 2d 1293, 1298-99 (N.D. Okla. 2005) (citing *Gaylord Entertainment v. Thompson*, 958 P.2d 128, 149 n.92 (Okla. 1998)). In fact, Schattin does not claim that Owen made any discriminatory comments in connection with his age discrimination claim, so it follows that Schattin cannot the meet very high standard to establish an IIED claim. (Schattin depo 235-236). Finally, Schattin did not seek any professional counseling regarding any alleged emotional distress, which belies any claim that his alleged distress was "severe." (Schattin depo 242-243). As such, his claim should be dismissed.

## IV. CONCLUSION

Based upon the material undisputed facts, Schattin has no basis to pursue this case against Dal-Italia under any of his theories of recovery. He cannot establish a claim of age discrimination under the ADEA or intentional infliction of emotional distress under Oklahoma state law. As a result, Dal-Italia is entitled to summary judgment in its favor on all Schattin's claims.

Dated:  May 12, 2014          By: /s/ Paul E. Hash
                                   Paul E. Hash (admitted *pro hac vice*)
                                   State Bar No. 09198020
                                   *hashp@jacksonlewis.com*
                                   Julie A. Farmer (admitted *pro hac vice*)
                                   Texas Bar No. 24059734
                                   *farmerj@jacksonlewis.com*

                                   JACKSON LEWIS P.C.
                                   500 North Akard, Suite 2500
                                   Dallas, TX  75201
                                   Telephone:    (214) 520-2400
                                   Fax:          (214) 520-2008

                                   *-and-*

                                   Jo Anne Deaton
                                   OBA No. 5938
                                   *jdeaton@rhodesokla.com*
                                   RHODES HIERONYMUS JONES TUCKER & GABLE
                                   ONEOK Plaza
                                   100 W. 5th Street, Suite 400
                                   Tulsa, OK  74103-4287
                                   Telephone:    (918) 582-1173
                                   Fax:          (918) 592-3390

                                   **ATTORNEYS FOR DEFENDANT**


## CERTIFICATE OF SERVICE

     I certify that on May 12, 2014 I electronically transmitted the attached document to the Clerk of the Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrant: Counsel for Plaintiff, David Warta and Grant Jackson; Smolen Smolen & Roytman, PLLC; 701 S. Cincinnati Ave.; Tulsa, OK 74119.


                                   /s/ Paul E. Hash
                                   Paul E. Hash